07-1950-pr
Pilgrim v. Luther

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2008

(Submitted: June 19, 2009                                    Decided: July 6, 2009)

Docket No. 07-1950-pr

PRINCE PILGRIM,

  *Plaintiff-Appellant*,

  -v.-

DAVID LUTHER, Corrections Officer, Sing Sing Correctional Facility, EDWARD VAUGHN, Sergeant, Sing Sing Correctional Facility, and JOSEPH T. SMITH, First Deputy Superintendent, Sing Sing Correctional Facility,

  *Defendants-Appellees.*[*]

Before: MINER, CABRANES, *Circuit Judges*, and STEIN, *District Judge*.[**]

Plaintiff-appellant, an inmate in New York's correctional system who appears *pro se*, brought this suit under 42 U.S.C. § 1983, alleging that defendants—three prison officials—violated his constitutional rights to free speech and due process of law in the course of an investigation and disciplinary hearing. We write principally to address plaintiff's argument that defendants retaliated against him, in violation of the First Amendment, for writing a pamphlet that urged inmates to participate in "work stoppages." We hold that this claim fails as a matter of law.

Affirmed.

---

[*] The Clerk of Court is directed to amend the official caption in this case to reflect the listing of the parties above.

[**] The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

Prince Pilgrim, *pro se*, Dannemora, NY

Marion R. Buchbinder, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Peter Karanjia, Special Counsel to the Solicitor General) for Andrew M. Cuomo, Attorney General of the State of New York, New York, NY, *for defendants-appellees*.

JOSÉ A. CABRANES, *Circuit Judge*:

We are asked to consider whether a prison inmate's First Amendment right to free speech is violated by enforcement of a state prison regulation that prohibits inmates from leading or organizing work stoppages at state penitentiaries. Plaintiff-appellant Prince Pilgrim ("plaintiff" or "Pilgrim"), an inmate in New York's correctional system, brought this suit, *pro se*, under 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights—principally, his rights to free speech and due process of law—in the course of an investigation and disciplinary hearing while plaintiff was an inmate at Sing Sing Correctional Facility in Ossining, New York. Plaintiff now appeals from a January 29, 2007 judgment of the United States District Court for the Southern District of New York (Richard Conway Casey, *Judge*), granting a motion for summary judgment by defendants-appellees Edward J. Vaughn (the corrections officer assigned to assist plaintiff in preparing for a disciplinary hearing) and Joseph T. Smith (the hearing officer), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and a motion to dismiss by defendant David Luther (a corrections officer who investigated and filed a disciplinary report against plaintiff) (collectively, "defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

The following facts are not in dispute and are drawn principally from the District Court's January 24, 2007 Memorandum & Order granting summary judgment in favor of Vaughn and Smith. *See Pilgrim v. Luther*, No. 01 Civ. 8995, 2007 U.S. Dist. LEXIS 7410, at *2-7 (S.D.N.Y. Jan. 24, 2007) ("*Pilgrim II*"). On September 14, 1999, defendant Luther filed an inmate misbehavior report against

plaintiff after a search of plaintiff's cell yielded three typewritten copies of a pamphlet entitled "Wake Up!". The pamphlet encouraged inmates to engage in work stoppages and other disruptive conduct in direct violation of prison rule 104.12.[1] Plaintiff, who was placed in administrative segregation pending a disciplinary hearing concerning his actions, requested assistance in preparing a defense, and Vaughn was assigned to work with him. Plaintiff requested that Vaughn obtain multiple documents and interview several witnesses, including Luther. Vaughn's supervisor instructed him that the requested information could not be disclosed to plaintiff, and that plaintiff could make his requests for discovery, including access to witnesses, directly to the hearing officer, Smith. On the first day of the hearing, September 20, 1999, plaintiff admitted that he wrote "Wake Up!", the contents of which were read into the record. On the second day of the hearing, September 22, 1999, after accusing Smith of bias owing to a prior conversation with plaintiff—a charge which Smith denied—plaintiff informed Smith that he no longer wished to participate in the hearing and returned to his cell. On September 24, 1999, Luther testified regarding his investigation. Following the hearing, Smith found that plaintiff had violated prison rule 104.12, based on (a) plaintiff's admission that he wrote "Wake Up!", and (b) Luther's testimony regarding his investigation and the search of plaintiff's cell.

Following an unsuccessful administrative appeal, plaintiff brought this suit against Luther, Vaughn, and Smith. On January 20, 2004, the District Court adopted in its entirety a February 27, 2003 Report and Recommendation of Magistrate Judge Kevin N. Fox ("R&R"), which recommended that the claims against Vaughn and Smith proceed to discovery but that the claims against Luther be dismissed on the basis of the pleadings. For the purpose of this appeal, we highlight one aspect of the R&R. Plaintiff claimed that Luther's investigation was a form of retaliation in violation of the First Amendment because Luther disliked the contents of "Wake Up!". The District Court adopted the

---

[1] Prison rule 104.12 provides: "An inmate shall not lead, organize, participate, or urge other inmates to participate, in a work-stoppage, sit-in, lock-in, or other actions which may be detrimental to the order of [the] facility." N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(5)(iii).

Magistrate Judge's conclusion that, "even though the search for and the seizure of [plaintiff's] documents . . . may have trampled upon plaintiff's First Amendment right to free speech, so long as the search and the seizure were conducted pursuant to prison regulations that are reasonably related to legitimate penological interests, no actionable constitutional violation exists." *Pilgrim v. Luther*, No. 01 Civ. 8995, 2003 U.S. Dist. LEXIS 2933, at *14-15 (S.D.N.Y. Feb. 27, 2003) ("*Pilgrim I*") (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests")). The Magistrate Judge observed that the prison regulations that permitted the investigation—including prison rule 104.12—were "designed to safeguard the correctional facility from[ ] disorder or conduct that might lead to violence or to collective action on the part of the prisoners designed to enable them to take over the facility." *Pilgrim I*, 2003 U.S. Dist. LEXIS 2933, at *15. Because the Magistrate Judge determined that "Wake Up!" advocated significant disruptions of prison order, and that the rules prohibiting such materials served legitimate governmental interests, he concluded that plaintiff's First Amendment claim failed as a matter of law.

The claims against Vaughn and Smith proceeded to discovery and, on January 24, 2007, the District Court entered summary judgment for defendants. The District Court concluded, *inter alia*, that (1) any shortcomings in Vaughn's pre-hearing assistance were harmless because plaintiff's "culpability [rested] primarily on two things: the seized documents, which [plaintiff] admitted [to] writing, and the testimony of Luther, which Smith deemed credible," *Pilgrim II*, 2007 U.S. Dist. LEXIS 7410, at *13-14 (internal citations omitted), and (2) plaintiff "has failed to allege facts necessary to support the conclusion that Smith was not fair and impartial," *id.* at *15. This appeal followed.

Before this Court, plaintiff offers three main arguments why the judgment of the District Court in favor of defendants should be reversed. First, plaintiff contends that Luther violated his rights under the First Amendment by conducting an investigation of the "Wake Up!" pamphlet and filing an inmate misbehavior report in retaliation for his exercise of free speech. Second, plaintiff argues that Vaughn

4

did not fulfill his obligation to assist him in preparing a defense for the September 1999 disciplinary hearing, in violation of his right to due process of law. Third, plaintiff argues that Smith deprived him of a fair and impartial hearing, in violation of his right to due process of law.

## DISCUSSION

We review *de novo* a district court's grant of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, construing all facts in favor of the non-moving party. *See, e.g., Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008). Summary judgment is only warranted upon a showing "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We also review *de novo* a district court's dismissal of claims pursuant to Rule 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Plaintiff's first argument on appeal contests the dismissal of the claims against Luther who, plaintiff asserts, retaliated against him in violation of his First Amendment right to free speech because Luther did not like the content of "Wake Up!". The prison regulation at issue in this case—rule 104.12—has appeared with some frequency in decisions of our Court addressing constitutional claims brought by prisoners. *See, e.g., Sira v. Morton*, 380 F.3d 57, 62 (2d Cir. 2004) (plaintiff "planned [an] inmate demonstration . . . in which inmates would conduct a work/program stoppage," in violation of prison rule 104.12); *Gayle v. Gonyea*, 313 F.3d 677, 680 (2d Cir. 2002) (plaintiff "threatened inmate unrest"—including encouraging inmates to file law suits and grievances—in violation of prison rule 104.12); *Gaston v. Coughlin*, 249 F.3d 156, 159 (2d Cir. 2001) (plaintiff organized a "food strike," *i.e.*, a boycott of the prison cafeteria, in violation of prison rule 104.12); *Duamutef v. O'Keefe*, 98 F.3d 22, 23 (2d Cir. 1996) (plaintiff "prepared a petition signed by 33 inmates asking for an improvement of prison conditions" in violation of prison rule 104.12). Only one of these cases—*Duamutef*—has addressed a First Amendment challenge to prison rule 104.12.

5

In *Duamutef*, we recognized that "[a]lthough the act of preparing and circulating a petition implicates speech and associational rights under the First Amendment, those rights must be weighed against legitimate safety interests of the prison." 98 F.3d at 24 (citation omitted). We also acknowledged that, consistent with Supreme Court precedent, rule 104.12 would be upheld over the plaintiff's First Amendment challenge if the regulation were "reasonably related to legitimate penological interests." *Id.* (quoting *Turner*, 482 U.S. at 89). Following *Turner*, we examined "(i) whether there is a 'valid, rational connection' between the regulation and a governmental interest; (ii) whether there are alternative means of exercising the constitutional right; (iii) whether the asserted right will have an impact on the allocation of prison resources; and (iv) whether the regulation represents an exaggerated or reasonable response to prison concerns." *Duamutef*, 98 F.3d at 24 (quoting *Turner*, 482 U.S. at 89-90). We concluded that all four *Turner* factors were met. "Petitions necessarily involve hard-to-monitor organizational activities that might well result in concerted conduct that undermines order in the prison." *Duamutef*, 98 F.3d at 24. So long as inmates had grievance procedures available to them, regulations limiting their rights to organize and petition were reasonable restrictions designed to further the government's interest in the orderly administration of prisons.[2]

Although *Duamutef* did not examine work stoppages specifically, other cases have held that similar inmate activity within prisons is not protected by the First Amendment. The Supreme Court has held that "[i]n a prison context, an inmate does not retain those First Amendment rights that are inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977) (internal quotation marks omitted), including "organized union activity within the prison walls," *id.* at 132. Work stoppages are deliberate disruptions of the regular order of the prison environment and are a species of "organized

---

[2] We note that, in the instant case, plaintiff has not suggested, much less alleged, that he had no recourse to complain about prison conditions other than circulating a petition calling for work stoppages.

union activity." *See id.* They are plainly inconsistent with legitimate objectives of prison organization. Entreaties to such activity, like "petition[s] protesting prison conditions," *Duamutef*, 98 F.3d at 24, are not entitled to First Amendment protection where other less disruptive means of airing grievances are available. Accordingly, plaintiff's First Amendment retaliation claim fails as a matter of law.

Plaintiff's remaining arguments on appeal—which largely concern alleged violations of his right to due process of law—are also without merit. Plaintiff claims that defendant Smith was not an "impartial hearing officer," but he has pointed to no evidence to support that conclusion. Regarding plaintiff's allegation that he received inadequate assistance in preparing a defense in advance of his disciplinary hearing, we have held previously that a prisoner is entitled to assistance in "marshaling evidence and presenting a defense" in advance of a prison disciplinary hearing. *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988), and that the assistance must be provided "in good faith and the best interests of the inmate," *id.* at 898. However, any violations of this qualified right are reviewed for "harmless error." *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991). In this case, although defendant Vaughn—who was assigned to assist plaintiff in preparing a defense for his disciplinary hearing—failed to comply with plaintiff's instructions on interviewing witnesses and gathering documents, any error on Vaughn's part was harmless in light of defendant's failure to identify any relevant testimony that was excluded as a result, his decision not to call witnesses when given the opportunity, and his decision to walk out of the hearing in protest of defendant Smith's role as the hearing officer. Indeed, Smith based his decision on (a) plaintiff's admission that he wrote the "Wake Up!" pamphlet, and (b) Luther's credible testimony regarding his investigation and search of plaintiff's cell, where he discovered multiple copies of "Wake Up!". *See Pilgrim II*, 2007 U.S. Dist. LEXIS 7410, at *3, 6, 13-14. We fail to see how either of these facts could be changed by further investigation by plaintiff or by Vaughn.

**CONCLUSION**

We have considered all of plaintiff's claims on appeal and have found them to be unavailing.

Accordingly, we **AFFIRM** the judgment of the District Court.